Bill Kaymark v. Bank of America Mr. Malikoff Thank you, Your Honor. We would like to reserve five-minute rebuttal. I think today we have some very interesting state issues as well as one federal issue arising under the Fair Debt Collection Practice Act. I would like to primarily, with the guidance of this Court's order, unless this Court directs otherwise, primarily focus on the State Unfair Trade Practice Act and also on the Fair Credit Extension Uniformity Act. To the extent that time permits, I will deal with the other two issues. Otherwise, we will rely on the brief. The Unfair Trade Practice Act almost has a colorful history with this Court and the State Supreme Court. The restatement of second and the restatement of third tension between what would the Pennsylvania Supreme Court do? We might receive some guidance on that question in the case of Grimes, which the Superior Court issued an opinion which would largely support the plaintiff's position here. But quite frankly, as correctly pointed out by BOA's brief, there's always that possibility it could be reversed and be handed with the Court. I have trouble agreeing with the way the Act was analyzed in that case. Your Chief, just so we can get to the heart of the issue, your Chief complaint is that the attorney's complaint or Bank of America's complaint contained an attorney's fee, this is called liquidated damages, for $1,650. That's correct. And that essentially the complaint was asking for fees that were not earned, contrary to State law and Federal law. Is that fair? No. Our main concern is that it was. I believe we have a case identical to, in all relevant respects, as to the case that this Court issued after the. This is all about attorney fees. It's all about attorney's fees, but it's all about what was authorized by the mortgage contract. The mortgage contract had three relevant provisions. It had paragraph 9, which talked about that the fees had to be reasonable. It had paragraph 14, which said that the fees had to be for services performed. And it had paragraph 22, which said the fees had to be incurred. Performed when? Performed when? The attorney's fee in question here was $1,650. I remember it was incorrect, right? Yes, Your Honor. $1,650. Yes, Your Honor. That was in the documentation as a flat fee. Yes, Your Honor. Now you argue that Fannie Mae guidelines say you can earn up to $1,650. But in the documents it said you get $1,650. You get an additional amount for the title search and for the title report and $75 for the property inspection. To me, those all sound like, in today's market, fairly reasonable fees. There's no question if you define fees by reasonable. But if you define fees by the method required to calculate the fee by the contract, then that was an unauthorized method. Okay, but no, I want you to focus on the word performed. It says performed. Now you argue that flat fees under state law are not permissible, but I don't see that there's support for that argument. If you acknowledge, if you accept the fact that flat fees are permissible, what's wrong with charging $1,650? Let's just keep it on the attorney's fee item for a second. What's wrong with charging $1,650 to file a complaint in mortgage foreclosure and to go through the various steps that you need to take to get to the point where you can take that property to sheriff sale? What's wrong with it is that the court is viewing it an issue that we don't contend otherwise. We certainly do not contend that that type of charging method is illegal. We certainly do not contend that that type of charging method is unethical. What we do contend, and what this court has held on June 26, 2014, is that type of method was not authorized in the mortgage context and constituted a Fair Debt Collection Practice Act. You say that, but you're not answering my question of why, when you've taken the step of preparing a complaint in mortgage foreclosure, identifying the property, you just can't pick any property, you have to put a Meats and Bonds description in the documentation, why when you've gone through those steps and committed yourself and your firm to taking that complaint to judgment and taking it to execution and giving directions to the sheriff to sell the property, why that isn't worth the $1,650 that you were entitled to under the document? It says you get $1,650 for performing that service. It seems to me once you start it, there's no turning back, unless your client comes in and pays off the debt and it gets current. A detailed response directly to the court would be found in Judge Reddick's opinions and Daniel V. Davis Davis, and also in his subsequent opinion and talk, and that's exactly what this court held in Sovati, which was one of our cases. So that was a letter and not a complaint? That's true. In this case it was a letter, but in Sovati it was a complaint, and the charges here were charged 60 days. It's one thing to send a letter, it's another thing to, you don't have to walk over to the prothonotary anymore like you used to, but when you start the process of filing that complaint, it seems to me that you've performed what you said you'd perform and you're entitled under the document to get $1,650. What's wrong with that? It doesn't meet the three criteria that are prerequisite for the mortgage. These mortgages are designed to be standardized, and our state law, which doesn't – I thought – can I interrupt you for a minute? I'm getting more confused. I thought the essence of your case was that it is a deceptive practice or it's a misrepresentation because the money had not yet been earned. That's correct. Is that the essence of your case? Maybe the attorney would earn $1,650 sometime down the road, but as of the filing of the complaint it had not yet been – is that the essence of your case? You've stated it better than I have, yes. Okay, so if you take the attorney's request of $1,650 and you put it in a wherefore clause and you take out the $1,650, it's okay to ask for attorney fees. Your problem is the mere insertion of $1,650. In the body of the complaint. And the problem is a pragmatic one because you have the right to cure the default up until the time that the gavel falls at the foreclosure sale. Let me interrupt your response to Judge Fischer. I just wanted to see if I can get to the heart of your complaint, which apparently is focused on the asking for $1,650 of attorney fees that has not yet been earned by counsel. And that, you say, is a deceptive practice. Yes. I'd like to follow up on that as well because we have our case saying that putting in a sum that is an estimate or something that's anticipated is not a fair practice. Yes. And your position is that the figure that's inserted here had not yet been incurred. To clarify, what Fannie Mae has in its schedule, that's not a flat fee, is it? Isn't that a cap? Yes. And what do we do then in terms of the damages that you allege with the fact that if, as Judge Fischer was pointing out, if as a litigation goes on, the fees are incurred up to that cap, your damages in the action that you bring are diminishing ultimately to zero, assuming that things move forward and meet or exceed the cap. At that point, what damages or loss do you have? There's a difference between the fact of damages, which is all ascertainable requires, and placing a value on that damage. We rely on two Connecticut Unfair Trade Practice Act cases as well as this Court's case of Edwards for that proposition. The Fannie Mae is a cap, and you can't look at the schedule in a vacuum. You have to look at their 2008 announcement interpreting that cap, which says it has to be prorated. That would be in footnote four and footnote five of our brief. The importance is that the number demanded for the homeowner to pay is at the heart of the whole foreclosure system. They have a right to cure the debt up until the gavel falls. If you inflate that debt, it makes it that much more difficult for them to incur the debt. So not only is it an FDCPA violation under this Court's holding in McLaughlin and in Silvadi, it's also pragmatically there is, in fact, serious damages. That's why the Pennsylvania Fair Housing Association says these notices have to be strictly complied with, and there will be, quote, unquote, serious consequences if they're not. That's why our state Supreme Court said in Monroe v. Stocker that filing a foreclosure complaint without going through the requisite procedure, in that case statutory, in this case, because the mortgage amount exceeds the X. I see your light is red, but maybe we have a few more questions for you. But I do have one that I just want to focus on as a practical matter. What is counsel to do? Counsel is entitled to $1,650 maximum. You say, well, don't put the amount in the complaint. All right, I understand that. Maybe going forward that's not a bad idea. But then what is counsel to do? When you file a separate complaint or when you file the request for judgment and submit affidavit of cert, what is counsel, what do you want counsel to do? They're entitled to the attorney fees, there's no doubt about it. As Judge Fischer points out, it probably will exceed way over $1,650 if you do the lodestar method that you suggest. What do you see counsel to do that would pass muster? Actually, in the real world, and we've cited cases, the courts have found that 80% of these cases are uncontested, they're default judgments. And in the real world, I do not believe discovery would show. In the vast majority of these cases, it takes more than an hour. All right, let's say something you figure is correct. Put this one in the 20% that's contested. What are they to do? What they always do. After they get a default judgment or if it's litigated a judgment, they file a word of reassessment on the judgment. It's very common practice. If you've looked at the foreclosure records, you'll see that oftentimes where the homeowner is represented by counsel, there's repeated requests for reassessment of the judgment. And that's what they have to do. It's our opinion that they have to use the road star method, just like you have to use under statutory fee cases in this circuit and in bankruptcy cases. Would it satisfy you if the papers used a term like estimate or up to? As I think we were suggesting in McLaughlin, that would make the statement accurate. That's correct. As opposed to saying this amount is actually due today, due and owing at this moment. That was misrepresentation that we identified in McLaughlin, right? Yes. This court drew the distinction between stating an amount due as a some certain that was estimated or anticipated and stating it as an amount currently due. And I found that when it's stated as an amount currently due, and it's an estimated or anticipated, that it violates the FDCPA. It's on one word. Attorney fees about $1,650. Yes. And that one word could make the difference between being able to cure. If you go back to an earlier case, Glover, and I argued in front of this court, that one word could make the difference between saving the home and not. I'm not sure it's necessary, but I'm trying to get your position on it. Mr. Malikoff, you've described a process that I don't want to use the word impractical, because that's not what we're here for, but you've described that you threw that 80-20 figure out. I would suspect that that 80 is a little bit low on these cases. That's what Judge Redding found after a survey of Allegheny County. You said there's only an hour's worth of work. I suggest that there's more than an hour's worth of work in a complaint for mortgage foreclosure and taking it to sheriff's jail. Somebody's doing more than an hour's worth of work, whether it's a partner or an associate. But you suggested a process that just doesn't deal with reality. Reality is it's what's in the complaint as to what the judgment is. When you press B for judgment, you ask for a judgment, and that's the basis upon which you sell the property for. The number is the number that's in the complaint. It's in the wherefore clause, the request for relief. I don't understand here where I go back to the 1650 in this document. You do have a breach of contract action here. I don't understand how that fee wasn't incurred once this process started. The process didn't start until 60 days after that fee was charged, number one. No, that fee wasn't charged. Your complaint is about what's in the complaint. That's correct. Okay, so you have to look at the time the complaint was filed. That's correct. That complaint says 1650, and that 1650 matches the amount that Mr. Kamarck agreed to pay for foreclosure proceedings when he signed that mortgage. That's incorrect. And one, and number one. It said you're entitled to fees for services performed in connection with for purposes of protection of lenders' interest. I think you can read this different ways, and I think you're taking the most narrow reading of it. Maybe it would help to just separate out. I thought we were talking about a couple of different things here, right? One is the Act 91 notice. So what we're talking about here is the consumer protection law and the state debt collection law. Those are your claims against Bank of America, not against the firm. The law firm, right? And your claims against Bank of America, are you saying that the activity, the debt collection activity at issue, you have in mind not just the notice, not just the letter that was sent, which was anticipating a future legal action, but also that legal action itself? In other words, you're attributing the action taken by the lawyers to Bank of America for these purposes? The Act 91 is a secondary issue, and it was defective here in three ways. It claimed three months default when it should have been two. It provided a 30-day response time instead of 33, and it was also defective because it had erroneous information, basically as held by another case. I had argued Vukman at the Pennsylvania Supreme Court, and in Vukman they pointed out that these notices had to be accurate. But you cannot overstate a debt by one penny, and if the number 1650 or 5,000 or 100, all of those might be within a range numerically of reasonableness, but those are estimated amounts, anticipated amounts, and the only difference between this Court's Third Circuit case and our case is here they use the word liquidated. We, too, use the word liquidated, but we primarily use the word flat fee. It had not been incurred at the time the complaint was filed, and it had not been incurred 60 days before the complaint was filed. And that in our complaint, although the papers say otherwise, if you look at paragraph 6 and 7 of our complaint, it says exactly what I am saying now, and the Court has to accept that. Did you reserve time for me, by law? Did you reserve time for me, by law? Five minutes. You did. We will get you back on time. Thank you very much, Your Honor. Mr. Allen. Thank you. May it please the Court, Tom Allen for Defendant Epa Lee, Bank of America N.A. Bank of America was named as a defendant only in the state law claims. It is not a defendant in the claim under the Fair Debt Collection Practices Act. So I will just address the state law claims during my portion of the argument. Mr. Bart will be addressing the claim under the Fair Debt Collection Practices Act. Mr. Allen, I would like to focus in on state debt collection law, because in terms of grimes with pending the Pennsylvania Supreme Court, we may not even need or wouldn't really matter to the claim here if we address the justifiable reliance question that is raised there, if we conclude the justifiable reliance is not required for the state debt collection law. Well, Your Honor, I believe the justifiable reliance is pretty clearly required for a claim under the alleging FCEUA violation. And the reason is that that statute has no private cause of action. And the statute on its face refers to the UTPCPL as the basis for any action to enforce the FCEUA. Well, it anticipates a private right of action. Haven't we looked at, in the state law cases, look at the federal debt collection law as the same standard? And there's language in the state debt collection law saying that the remedies shouldn't be duplicative of those in the federal debt collection law, which clearly anticipates that a consumer would be able to bring such a claim, right? Otherwise, it wouldn't make sense to even talk about a cumulative. Well, a consumer can bring a claim alleging a violation of the state, what you call the state debt collection law, the FCEUA. However, that claim has to be under the remedy that's provided in the UTPCPL. But doesn't the language of the state debt collection law say that a violation of that law shall constitute a violation of the consumer protection law? That's correct. And the way the UTPCPL is structured is that the statute defines conduct that constitutes a violation. Then there's the remedy provision, the civil liability provision, which is, I believe, Section 9.2. And it's the provision that has a standing requirement that applies to all the different types of claims you can allege under the statute. So I think it's clear that that provision, including the standing requirement, which is the root of the justifiable reliance requirement, applies to any claim alleging a FCEUA violation. How is that clear when the statute says that a violation of it, and for those violations we're looking at the same standard for what would constitute a violation under the federal debt collection law, shall constitute a violation of the consumer protection law? Why aren't we just looking back to the remedy provisions? In other words, the enforcement or remedy section of the consumer protection law. I'm not sure I completely understand your question. But I think, first of all, it's very important to understand that the state debt collection law is very different from the federal Fair Debt Collection Practices Act, particularly with respect to the remedy provisions. Because the remedy provision under the FDCPA is a provision that provides for statutory damages without proof of actual damages. That provision is not in the FCEUA. And if the intent of the General Assembly was to provide such a remedy, they could have and would have provided it explicitly in the statute. And instead what they do is they take the approach, and in fact the first section in the scope of the act says, this act establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts. So the reference is clearly to the UTPCPL, and that's where any remedy would occur. Both remedies that can be taken by the Attorney General and remedies that can be by Pennsylvania Attorney General, and the remedy in section 9.2 which requires the justifiable reliance requirement. You're asking us to, as remedies, add on additional elements of a claim, aren't you? No, I'm not. The way the UTPCPL is set up is that in one section the statute, and that's the section of, I thought I had the number here, but I don't. But what the section does is it defines what constitutes an unfair or deceptive practice. Then another section says any conduct that meets that definition violates the UTPCPL. Then 9.2 is the section that provides a civil liability and provides a cause of action, and that's the section that has the standing requirement that requires proof of justifiable reliance. That's for violations of section 3, right? When we look at the enforcement penalties of the state debt collection law, where it says under 2270.5A that it shall constitute a violation of the unfair trade practices and consumer protection law, and then it points to the remedies for a violation not being cumulative. The penalties shall not be cumulative. How do we get from that to adding on elements of a claim? Well, Your Honor, I mean, first of all, there's no remedy under the Fair Debt Collection Practices Act against a creditor. So that's why Bank of America is not a defendant in the Fair Debt Collection Practices Act claim. So there's no remedy here against Bank of America. Under the State Debt Collection Practices Act, it also includes creditors who can be potentially considered to have violated the statute. And so in order to what the statute says is this constitutes a violation of the unfair trade practices law, and in order to have a private cause of action for a violation of the unfair trade practices law, you have to meet the standing requirement, which includes the justifiable reliance. Wouldn't that eliminate, if that were true, wouldn't that eliminate entirely the ability of a consumer to bring a claim under the State Debt Collection law? No, that doesn't eliminate that at all. Under what circumstances could they show justifiable reliance? I'm sorry, I apologize for talking over you. Under what circumstances could they show justifiable reliance? Well, if there was an, let's say there had been a misrepresentation made by a creditor with respect to collecting a debt and a false statement was made and the consumer paid the debt, even though they weren't liable for the debt, then they would be able to allege that we took action in reliance on a violation of the statute and we suffered an ascertainable loss of money or property as a result of that. So the State Debt Collection law would only provide protection then to consumers who actually paid the incorrect amount? Well, they have to take some action in reliance. I mean, that's the requirement under the UTPCPL, and that's, as this court established in Hunt, it's required to show justifiable reliance and ascertainable loss of money and property. And so I think that's clear from the face of the statute. I did want to add one thing. I realize this was a non-presidential opinion, but in Salvati, the opinion actually addresses this issue and states that the FCEUA is enforced through the statutory remedy provisions of the UTPCPL. Salvati's FCEUA claim is premised on the viability of his claim under the remedial provisions of the UTPCPL. Could you repeat that, sir? This is in the Salvati case, Your Honor, which is cited in our brief. And I will get that cite for you, Your Honor. I think it's actually cited in both briefs. And, again, I realize that's a non-presidential opinion and isn't binding on the panel. But I just want to add one final response, Judge Krauss, that I think it's very important in construing this State Debt Collection Practices Act to not expand it to provide a remedy that clearly was not authorized by the statute. And what the plaintiff has said, at least in his briefs, is that his position is any violation of the State Debt Collection Practices Act, the consumer is entitled to $100 per violation without any showing of harm. There's nothing in the State Debt Collection Practices Act that supports that. And, to the contrary, it incorporates the Unfair Trade Practices Statute, which in that statute it's very explicit that there is no remedy under the Unfair Trade Practices Act unless harm has been suffered by the consumer. And so I think the argument that the plaintiff is making is way beyond anything in the statute. But that goes to a possible requirement of loss, which is something different than justifiable reliance, right? Well, that's right, Your Honor. And, you know, we addressed this in the briefs, that here the plaintiff does not allege that he's paid these fees. So one of our primary arguments, and, in fact, what the district court relied on very heavily, was that there's no loss because the fees have not been paid. Can you address the other question we flagged for you in our letter about whether an increased lien on property constitutes loss under the statutes? Well, I believe, Your Honor, what the statute requires is that there needs to be allegation of an ascertainable loss of money or property. Ascertainable means capable of being ascertained, and I think the dictionary definition of ascertain is to find out with certainty. And there is no certain loss arising from the allegations that the plaintiff makes in their complaint, which is that their sole alleged loss is that the, and I'm quoting, his current account balance, payoff amount, was falsely inflated upon the filing of the foreclosure complaint and the charges were improperly leaned against and encumbered his property. That's what the complaint says. We're not admitting that for all purposes but for purposes of the motion to dismiss. Even if that's true, that does not establish a loss, an ascertainable loss or any damage, because it's entirely speculative. Something else would need to happen for that to become a loss, and even the plaintiff in his brief says, when describing how this could harm him, he says if he were to sell his property, then he would get less in proceeds after paying off the loan. Or if he obtained a loan on the equity in his property, he says he would get less. But he doesn't allege that he sold his property and he doesn't allege that he even tried to get another loan. But if he waited to that point, surely the statute of limitations would have run on these claims. Pardon me? Is it your position that the imposition of binding debt, an increase in liability, does not constitute loss? Well, first of all, I'd say I don't think this technically is an increase in liability because it's contested. In the foreclosure proceeding, the plaintiff contested the attorney's fees and said he wasn't liable for them. That goes to what the loss is and what the precise amount may be disputed as to those fees. But just conceptually, are you taking the position that a lien on property, assume that it is for a certain figure, that a lien on property or any kind of increase in legal debt does not constitute a loss? I think if the debt's contested, it doesn't constitute a loss. I mean, here, first of all, the lien had been imposed, had been in place for a long time, the lien under the mortgage. So, again, accepting his allegation as true, that this amount of attorney's fees caused the amount of the lien to increase, I don't think that does not cause any loss to the plaintiff at the time it occurs. Something else is going to have to happen before he's going to realize any loss from that. So, and I think, you know, the plaintiff has not cited any cases finding that that does constitute an ascertainable loss under the UTPCPL. Mr. Allen, how about if we get over to, thank you very much, we'll get over to Mr. Bartsch, Your Honor. Thank you. Thank you, Your Honors. Jonathan Bartsch, Lawrence Goldman & Spitzer for the Udren Law Firm. And I think Judge Fischer hit the issue on the head with respect to the FDCPA claim before by noting to Mr. Malikoff that this case involves a lawsuit and McLaughlin involved a letter. They are treated extremely differently under the FDCPA jurisprudence. I am somewhat hamstrung, of course, because this argument was made in a reply brief. So I'm prepared today to list all the cases which would say three things. First, documents filed with a court in a lawsuit are not made to debtors under the FDCPA but to the court. So it's not a representation to a debtor subject to the least sophisticated consumer standard. Secondly, a request for legal fees in a complaint is not subject to the FDCPA. And I cited the Howe case at pages 26 to 28 of my original brief. There is considerably more case law on that issue pertaining to collection lawsuits. Indeed. It's an interesting thought, though. I have never thought of it that way, that a document like a complaint is addressed to the court. Not that you have to file it in court. But you're making accusations, you're making statements or representations of liability to the other side. Well, it goes to the other side, but it has to be adjudicated by the court. There's a big difference between a debt collection letter. But you do make representations in a complaint that are read by defendants, whether sophisticated or not. Except it's not making – I'm sorry. Didn't we also reject these very arguments in Simon v. FAA card services and Piper v. Portnoff Law Associates? There are a couple of cases in which – and I'm trying to – you're saying that legal fees? That statements that are deemed to be misleading regarding the debt, they're not immunized because it's in a complaint or it's in the context of court litigation. It's not immunized, Your Honor. However, it is not held to the standard of the least sophisticated consumer when it's in a complaint that has to be decided by a court. Where have we ever held that? Well, the Third Circuit hasn't ruled on that issue at all. The issue that requests for legal fees in a complaint are not subject to the FDCPA. I can give you Mayhall v. Berman v. Rabin, 2014, U.S. District, Lexus, 11397, Eastern District of Missouri, 2014. A request to the court for an award of allegedly unreasonable attorney's fees does not, without more, constitute a violation of the FDCPA. Hart v. Pacific Rehabilitation of Maryland, 2013, U.S. District, Lexus, 130951, District of Maryland, 2013. The defendants have not violated the FDCPA by inserting an amount of attorney's fees in the collection complaint after plaintiff agreed to pay reasonable attorney's fees. If plaintiff questions the reasonableness of the fees, it has various ways to challenge them. Again, as I said, I didn't have an opportunity to brief this issue because this argument was made in the reply brief. If Your Honor wishes and would like briefing on it, I would be happy to submit a brief in response. Well, actually, I would like to see that. All right. And, of course, if you could submit a brief on that very question. And, Mr. Malikoff, also, you can file a joint brief on that same point. All right. I'll be happy to do that, Your Honor. You can speak to the clerk, just not to exceed three pages. We've got plenty to read within, let's say, ten days of today. Let's go back, Mr. Boyd, to the point that I asked Mr. Malikoff about. I think that, of course, the essence of this case revolves around the question of whether or not the $1650 plus title search and inspection report were for services performed and whether or not those costs were incurred. I mean, is there anything wrong with the flat fee? Well, if there were, I can't imagine that they would be regulatorily prescribed. Yeah, I mean, in some of the cases you cited talk about reasonable fees. We're not talking about reasonable fees here. We're talking about flat fees. I guess my question to you would be when this complaint was filed, did your client, the Edwin Law Firm, have the right to claim that flat fee of $1650? Your Honor, I'm going to answer you somewhat indirectly because the claim for the fees in the complaint was not a statement of you owe us that fee right now. Upon judgment, we are entitled to $1650, which is what the Fannie Mae rules provide. When you take it to judgment, that's when you're entitled to the $1650. And that's what we're asking for. That's why I'm trying to say — Is that the words of the complaint? The way Mr. Malikoff tries to distinguish it in his footnote six, he concedes that you can ask for a fee, but he claims that it only can be in a prayer for relief, not the body of the complaint. So for Mr. Malikoff's argument, it's okay to demand $1650 in the prayer for relief, but not in the body of the complaint. Is that where you had it? It was in the body of the complaint, but so was in the case that he relies on. That's the case he relied on. Was it in the prayer for relief? It was, no. But was it in the prayer for relief? The total was. It was included in the total in the prayer for relief, but it was broken out in one of the paragraphs which set forth each of the individual items that made up the total. You argue in your brief that it's upon judgment, but the complaint at paragraph six on page 47 of the appendix states, the following amounts are due in the present tense. I understand that that's what it says in the complaint, but you're not allowed. That's what I'm trying to tell you, Your Honor. A complaint seeks judgment. It is not the same as a debt collection letter which goes to the debtor saying pay us or else. Let's go back to Judge Fischer's question. Yes. That statement, the following amounts are due, are currently due. Right. Were they currently due on the date that this complaint was filed? On the date it was filed, to tell you the truth, I don't know that, Your Honor, because I don't know how they, if you looked at, if it were the same as McLaughlin, it would be, according to the court in McLaughlin, the estimate is okay as long as it is less than what you billed your client at that time. Had your law firm actually incurred this amount of fees at the time you filed the complaint? It seems like a simple yes or no question. The answer to that is probably no, Your Honor, but that's not, the issue here is what you're entitled to at judgment. There is no distinction between a prayer for relief and what's in the body of the complaint. I understand that that's what it says it's due then. Those figures really pertain to the debt figures, Your Honor. The attorney's fee figure wasn't going to change. The debt figure was as of the date of the complaint, and they added a line which included the attorney's fees as well. Was there a judgment by default taken in this case? No. It's still being contested, Your Honor. The actual complaint is? It's being contested in the court. It will have to rule on the reasonableness of the fees. You distinguish McLaughlin in a very interesting way. In the letter of that, you have to be certainly more accurate and specific, but you say because it's in the complaint, it's subject to proof. Right, and subject to control of the court. That was the whole argument on Gabriel from the Second Circuit, that the debtor is protected by the procedures of having to make a presentation to the court of how much is owed and the reasonableness of the fees. The arguments that Mr. Malikoff makes with 80% of being in default pertain to the purchase debt revolving credit cases. That doesn't happen in the foreclosure world where everybody knows who the debtor is. In the purchase debt cases, like the Palisade cases and the like, you have giant portfolios being purchased. They don't have the documents, and they just sue hoping to get a default judgment. Was it answer filed to the complaint? Yes. I assume it was. Yes. Was there any reference to the counsel fees? I think there was a general denial of entitlement to the fees. But it's still being litigated in the Court of Common Pleas, and that court will have to make the determination whether $1,650 is a reasonable fee or not. That's the Howe case that I cited at pages 26 to 28 of my brief, Owens v. Howe, which said, To follow Owens' reasoning, a debt collector could never recite a specific amount for fees in a complaint until he obtained both a judgment and specific court approval of them. As in Fields, the Seventh Circuit case, the Act does not require such an extraordinary result. All that is required is that there be some basic itemization of the various charges that comprise the total amount of the debt. And since that's what Howe did here, its complaint did not violate the Act. And again, I will give you a brief showing that the majority view by far, except for those purchase debt revolving credit cases, is that a demand for fees in a complaint does not violate the FDCPA, but rather it's a matter of discretion for the state court that's ruling on it. What Mr. Malikoff would have you do is create a parallel practice in federal court of challenging the reasonableness of fees, which clearly is within the competence of the state court in those cases. If the case were to go forward, how would you establish what you're entitled to in terms of counsel fees? Well, it would be a request made based on the Fannie Mae guidelines. And the regulatory, I mean, I think as Judge Fisher pointed out, this is far less than any hourly rate would ever be. But, I mean, that would be a matter of, I mean, conceivably it would have to be established by expert testimony. But I don't think, and Mr. Malikoff would question that the fee itself is reasonable. He's questioning whether listing it in the complaint rather than, well, we've now earned $500, so we can plead in the complaint it's $500. A month later, we've now earned $1,000, so we seek to amend our complaint. It's totally unworkable. Didn't you say that just identifying it accurately as an estimate or anticipated amounts would address the problem? And isn't that exactly what we said in McLaughlin? In McLaughlin, you said that with respect to a debt collection letter. And what I will show you is that. I understand that you're saying it's different in a complaint. And since I had understood that argument was rejected by the Supreme Court in Heintz and by our court in Simon and Piper and LaSalle Bank, in terms of the different rationales that you've argued as to why the fact of litigation would take this outside of the Debt Collection Act, I would urge you to address those cases in your submission. I will, and I'll address Heintz right now. Heintz did not address that specific issue. Heintz only said that litigation activities of attorneys can be subject to the FDCPA. Under the Fair Debt Collection Prices Act, is there a materiality? That is my other argument, of course, that the materiality aspect of it, which has not been directly addressed by the Third Circuit, yet it is well established in other circuits, including the Second, is that an issue, a representation is material if it would have caused the debtor in any way to act otherwise. And in the context of complaints, the idea and what Judge Bassoon found below is that what would they have done differently? They went out, they hired counsel, and they're defending the case, and they're objecting to the attorney's fees. That's the purpose of the allegations in a complaint. It's not an attempt to say, well, you've got something wrong in the complaint. It's not going to be a Rule 11 or a State Court 102.3.1 violation. We're going to make it an FDCPA violation. In this case, there was no material aspect of that complaint which was false. They filed an answer, and the question of the reasonableness of the fees will be adjudicated by the court. Materiality, though, deals with typically loss amount. At least that's what I understood the question to relate to. Are you arguing that there is or is not a dollar amount materiality threshold? No, I'm not arguing that there is a dollar amount, but it's ‑‑ And would you agree that that argument is foreclosed by McLaughlin, given that the fees there were only $615 material? Absolutely not, because, Your Honor, I'm, regrettably, counsel in McLaughlin. That was just on a motion to dismiss. There was summary judgment granted, but the decision of the Third Circuit was on an earlier motion to dismiss, which was granted. Then there was an amended complaint file. There has never been a defense or issue of materiality in McLaughlin. It was not addressed, and it will be on remand. But McLaughlin did not resolve materiality. But, again, I urge you to consider the difference between a debt collection letter that goes directly between the debt collector and the debtor and a complaint court process which has the interposition of the court. I'm sorry, just two quick questions. We've had some discussion about the Fannie Mae schedule. Can you confirm, is that a cap or is that a flat fee? Actually, you could go above the cap. It is a flat fee to take it through judgment. But if you do additional work, if there are motion practice, there are different categories to allow additional sums to be earned. But the basic fee for taking it through judgment is $1,600, or it was at this time. I think it's up since then. But it was $1,650. The schedule itself says that the fees encouraged shall not exceed the amount below. But you're telling us that that is, you're interpreting that to mean that there is a fixed amount, regardless of the hours that are actually worked, there's a fixed amount due and owing? Yeah, it is not hourly. So there's no hourly surcharge. There are provisions in the schedule which aren't really relevant in this case, that if certain things happen that require additional work, you can seek additional payment. But the basic schedule for taking a case to judgment at the time of this case was $1,650. And you refer to it as regulatorily prescribed or statutorily prescribed? I think regulatorily was the term I used. Can you cite us to the statute of regulation that prescribes that schedule? Well, I think Mr. Malikoff did, what is it, 8-19, Fannie Mae announcement 8-19, August 6, 2008. And let me see if I have a citation. Other than the announcement 8-19, I do not have a citation on it. I did bring it up with me before. Okay. We have to get back over to you. You want to finish up with your last comment so we can get back over to Mr. Malikoff? Remember, this is billing. I mean, Fannie Mae's schedule is the billing that goes to the client. And that limits in a Fannie Mae mortgage what you can charge the client. So the amount being charged to the client is reflected in the complaint as the attorney's fees. There's no discrepancy there. Okay. Thank you, Mr. Bart. Mr. Malikoff. Thank you. Thank you, Your Honor. I'd like to address four questions. The announcement 8-19, which I have in front of me, which I'll quote, says that the fees shall be prorated reasonably related to the amount of work actually performed. Where was that, Mr. Malikoff? The website that the court can access it is referred to in my brief in footnotes 4 and 5. Is that the Fannie Mae? Yes. In other words, the schedule has to be read along with this. The schedule that BOA is relying on, if you look at the entire footnote, it's simply setting the maximum. The point of Mr. Bart, I thought, was somewhat interesting. This is a statement that's contained in a complaint. It's an allegation. And so then it's subject to proof by the court. It doesn't mean that the court is going to grant $1,650. It's really a claim that's addressed to the court in a court-filed document. To address that, how do you rely on the fact that, well, we owe $1,650? Yes. First of all, the United States Supreme Court has noted in Hines this court in Simon v. FIA, and more recently in German has all addressed that and rejected that position. But secondly, as a pragmatic matter, it's absolutely important, and no case has applied materiality when the debt has exceeded the amount owed by one penny, one penny. And to put this in context, most mortgages in Pennsylvania are in an amount under $217,000. They're therefore covered, unlike this one, which is a $234,000 mortgage by Act VI, Section 4062. That provision requires that no more than $50, $50, can be charged in any foreclosure action before the complaint is filed. This is 33 times that amount charged two months before. That's a request, though. I don't know when you say it's a charge. It's in the complaint, but it's really something that's requested. Now, the court can say, you know, the Ugen firm, you really don't deserve $1,650. I see your affidavit of services. You only deserve $1,750, and that's all you're going to get. So how do you say it's a charge that actually has to be paid? Because it says it's an amount due, number one. And number two, it is representing the amount that has to be paid for the debt. I sort of see it as an aspiration. This is what we want. I think we deserve it, but that doesn't mean the court's going to grant it. I've looked at thousands of foreclosure actions here in Philly, Harrisburg, New York. Almost all of them end up in default judgments, and almost all of them are the amount requested in the prayer for relief. This is the amount that it is paid for, along with the principal interest, escrow rate, fees, their title, and now various other charges. Okay, turning that statement back to you, what's wrong with that? Nothing is wrong with it in an abstract sense. I'm not saying that's our case here. No. Your view of the case, as I understand it, is that if BOA and Fannie Mae agreed to pay $10,000 for a foreclosure action, that somehow that agreement between Fannie Mae. That's not my view at all. I don't hear what he's saying, me individually or me as a court. I clearly said that $1,650, and you acknowledge it, $1,650 is in the mortgage. No, it is not. It is not. That's what Judge Wettig went into in great detail, that the numbers do not appear in the mortgage. The mortgage has two objective prerequisites and one reasonable standard. The mortgage has a service preferred and incurred standard, and the number $1,650 is not in the mortgage, number one. And number two, the mortgage has no relationship, none, to what BOA agrees that Fannie Mae will pay. Fannie Mae can agree to pay $100. It could agree to pay $50,000. That has nothing to do with what BOA's contract. The question is, what does the debtor agree to pay? The debtor agrees to pay the amount that's not set forth. It's a standard that's found in the mortgage, Paragraph 9, Paragraph 14, and Paragraph 22. Those deal with services performed, incurred, and reasonable. The last one is a term of art discussed by our Pennsylvania Supreme Court. It used to be you agreed to pay 5%. Yes. You agreed to pay 5% as the principal amount of the debt. That is absolutely true. You could find a lot of common law cases where all you found was a percentage. And the question is, is not whether $1,650 is reasonable or not reasonable in an abstract world. The question is, what did the parties agree to in the mortgage? They did not agree to $1,650. But once you file an answer, you say, no, we don't know that, that the issue is joined, and it's no longer a debt. Now it's up to the court to decide. Yes. I'd like to draw the dots on the FCEUA, which I didn't get a chance to. The FCEUA repealed the banking code in the year 2000. This is not my brief, by the way, but it will help the court in light of its lines of questions. Before 2000, you didn't have an FCEUA. You had the Unfair Trade Practice Act. And the FCEUA had in Section 201-3.1, it had a provision for the Department of Banking to make regulations. In those regulations, the banking department made debt collection activities an Unfair Trade Practice Act. And it said, if you violate this, you shall have violated the Unfair Trade Practice Act. So historically, the interpretation that the court was suggesting that a violation of those debt provisions gave rise to an Unfair Trade Practice Act. Then they eliminated and repealed the regulations, and they enacted the FCEUA. The FCEUA, the problem that's giving everyone a lot of trouble, is the first sentence. And the first sentence, though, doesn't apply. The next two sentences in the Unfair Trade Practice Act does. It doesn't apply based on two reasons found in the first sentence. First, it is limited to – I have – Mr. Malikoff, your red light has been on for quite a while. Maybe you can finish up. We do have to get to another case, so I'd appreciate it if you just make your final comments. Yes. I'll go in then with one quick comment. Loss and damage is very different. It is explained by the two Connecticut cases. When you say ascertainable loss, you mean whether there was a diminution or some type of taking. And takings don't require reliance. If I am a landlord and I collect a security deposit and have a systematic practice of keeping those security deposits, the party, my tenant, my – the renter is harmed by a fraudulent practice by being passive. That's what Judge Bison has said. You can't have reliance. If I agree with a utility company or a bank on a home equity loan, that they can charge my account a certain amount and they charge it double. I'm a passive party. Thank you. Thank you, Mr. Malkoff. Thanks very much. Thanks to both counsel. We went on quite a bit longer than we usually do, but there are a lot of intricacies in the case that we have to grapple with. Thank you both very much. We'll take the case under advisement.